Your Honor, I'd like to, in view of the fact that I have two respondents, I'd like to reserve, if I could, ten minutes for rebuttal. Sure. You know, you've got a talk in front of you. You might at some point address what's going on in the district court. We've been informed, I thought, that the district court is about to rule on the permanent. And as you know, if that happens, the preliminary becomes moot. It gets merged in the permanent and becomes moot. So I hope all the counsel speak to this issue, whatever else you say. Yes, Your Honor. I will let you order your argument. I guess as an elaboration on that, too, it's my understanding that the summary judgment's not finished. I mean, it didn't conclude all claims against all parties. That's absolutely correct, Your Honor. And, in fact, it didn't conclude the most important issue of all, which is what is the nexus or the relationship between the alleged fraudulent conduct. And it's very important here because the alleged fraudulent conduct in terms of what was found, Judge Gonzales's order is a matter of record. The reason I mention that, obviously, for jurisdictional purposes, you're going to have to have some other jurisdictional hook rather than the summary judgment itself. Because if it's not final. I understand, Your Honor. At this point. And there are other hooks, but they may not cover everything that's attempted to be brought before us. Yes, sir. Well, I think with respect to speaking of subject matter jurisdiction first, as we stand here now, I don't believe that anybody's disputing. In fact, they're not disputing. It's in the SEC's brief that there is jurisdiction, subject matter jurisdiction for this Court to hear the March 24, 2004 appeal. No one's disputing that. The issue is that something happened between our filing the appeal and as we sit here before this Court today to make that moot or to render no jurisdiction. And the answer by both parties, I believe, will be no. This issue is still alive and well. Well, you can certainly appeal a preliminary injunction. You can probably appeal appointment of a receiver. Yes, sir. But as far as the preliminary injunction is concerned, if once this Court issues a permanent injunction, the preliminary injunction disappears. I mean, assuming that it does, which I guess is indicated as well, and our jurisdiction over that part of the case is gone. Well, to cut to the chase, Your Honor, in terms of what's really important here today from our perspective is the issue pertaining to the sale of the home. That is, there isn't, with respect to Judge Gonzalez's order, there's a specific provision that we're all here to talk about, which provides from day one, from day one, from March 2004, that Mr. Vassallo's assets, his personal assets, were in fact subject to costs and the expenses of the receiver. In this case, what we have before us here, you're right, Your Honor, this is not a case regarding the appeal of the summary judgment. This is not a discouragement issue. This is an issue of one issue only, and that is whether they can sell Mr. Vassallo's house to pay for the expenses, fees, presumably, house of Mr. Lennon. And that is all that is before this Court. And with respect to that issue, Your Honor, I'm a little surprised that the SEC is not sitting on my side of the table. They have requested a continuance here. They've requested a continuance pending the outcome of the final judgment. In this case, they've not submitted, in their last go-around, there have been approximately nine briefs before this Court regarding these issues. But, Your Honor, to boil it down, the issue is whether or not the receiver can, in fact, do that, and whether or not they can from the start of the case without any reference or determination as to an issue concerning. But there's been no order to sell the house. Is that an appealable order? I mean, the decision that the house is saleable, there's been no sale approved. I don't see where that point, where that issue is right. Your Honor, the issue with respect to the sale of the house can only be had because of the initial order. That is without dispute. And the reason that that's without dispute. You can certainly dispute the order, this order appointing the receiver. Yes, sir. Which included, which included, which specifically provided, Your Honor. If you don't receive the house, you know, if we knock out the receiver, then you don't have to worry about the sale of the house. No, sir. There's one difference. I'm not, with respect to the order appointing the receiver, in Section 7 of that order, the preliminary injunction specifically provided that Presto and Vasello shall pay costs and fees and expenses of the permanent receiver. That's what caused all this consternation as to why we're here today. That has never been done. We have cited cases, and as has the SEC and has the receiver, which all hold that with respect to that issue, you always look to the estate. Even assuming that is, that is appealable, which I think it probably is, earlier over at this point, it still doesn't have anything to do with the sale of the house. Yes, sir, it does. Because with respect to the judge's orders. Well, only insofar as if she's not responsible for the fees, they can't get any of his assets, including the house. And, Your Honor, there's a specific nexus because Judge Gonzales specifically referred as her authority to sell the house to her March 1, 2004 order. But that's as far as we go. We don't talk about house. We talk about whether or not there can be a receiver appointed and whether or not your client can be held personally responsible for the expenses. There's nothing to say whether a house can be sold or any other asset can be reached, assuming those two portions of the order are valid. Sir, I respectfully disagree. The third question as to what asset can be reached is just not before us. It's not right. Whether the house, assuming the receiver is properly appointed, assuming that your client is responsible for the fees, the third question as to whether his house somehow can be reached is not before us. The only reason it's before us, Your Honor, is because we've requested an emergency stay because the judge, in fact, did issue an order of sale of the house pending an actual contract for sale. And had we let this go, there's no question that we would have been too late in coming back before this Court. The house would have already been sold. It's not for stay, I get it. I mean, the stay is still in effect. Yes. Yes, sir, it still is in effect. So it is a very real issue because of that. This is not a hypothetical. They're trying to sell the house. And it also applies before one other reason, Your Honor. This house is in the name of a trust. Mr. Vercella doesn't own it. It's a family trust. This is not an uncommon estate planning device. But if they get past the trust issue and go back to its original title issue, it is held in joint tenancy. This is all hypothetical. I agree, Your Honor, but they have gone right through. We can hardly review the question of whether they can purchase the trust, whether an ECM can purchase the trust. I mean, you're raising all sorts of, you know, you're clock-ticking. I have not raised these issues. The SEC has raised these issues. I'm sorry, the receivers raised these issues. Yes, sir, when they said, we want to sell the house. And they want to sell the house. It's not my client's name that Mrs. Vercella, even if you get through the trust, has a community property interest. There's been no order punching through the trust. There has been an order to sell the house, Your Honor. There has been an order to sell the house pending the judge's review. Pending the judge's review, there has been an order to sell the house. What do you mean pending the judge's review? Your Honor, in July 2005, the Court specifically held, issued three orders, one of which was a summary judgment. Another companion motion referred specifically to the request to sell the house. And in that motion, it was requested by the receiver that the Court confirm their ability, the authority for them to sell the house, that is, for the receiver to sell the house. The SEC agreed, and the Court said, yes, you can sell the house. So it is a very real issue before us. Well, that's different from saying there's an order to sell the house. I'm sorry, Your Honor. I think you're mincing words. There's been no contract of sale. No buyer has been found. There has been no ruling on whether or not they can sell despite the trust. I mean, none of that has happened. It's all hypothetical. And your clock is ticking. I understand, Your Honor. So in any event, with respect to the sale of the house, it still goes back to the same issues while we're here, which is Section 7 of the Preliminary Injunction Order, which is certainly appealable. That order specifically provided that Mr. Vassello's assets are subject to receivership. There is no case at all that would allow that. What's the problem with that? I mean, you know, there's a preliminary determination that the company is deeply in debt and that your client ran to the ground. There is evidence that on the day the TRO issued, he was trying to siphon money out of it for his personal benefit. And so the court put in a receiver. It seems perfectly plausible, well within the discretion of the district court, which is vast, quite broad, unusually broad. And then once you get past that point, you have the question of who pays for the receiver. And it seems perfectly plausible to have the person responsible for the wrongdoing and to harm the district court's pay for it rather than having more money come out of the company, which has already been run to the ground and, you know, further harming the creditors and investors. Here's the problem, Your Honor. There has been no determination of that, and that's a very real, still a live issue, of fact, because we submit strongly and we believe we're going to prevail in the summary judgment. They've had two attempts. This is their second attempt to show at summary judgment that there's a nexus between the alleged harm that my client's caused and the damages that resulted from it. Your Honor, we believe strongly we're going to prevail on that. So, no, sir, we do not believe there's any evidence, and there is no evidence to show this was a preliminary decision, a preliminary decision for a preliminary injunction. There's no evidence to show that Mr. Vassello did cause all this harm that they're alleging. That issue is still not to be determined as we sit here today. Doesn't there have to be some kind of determination regarding likelihood of success on the merits in order for the preliminary injunction to lie? Yes, ma'am, with respect to the setting of the appointment of a receiver, yes. With respect to the issue concerning who pays for that receiver, Your Honor, there is no cases whatsoever that provide at the very start of a case, the very start of a case, a case which the defendant may win, the plaintiff may win. You can bypass. This is not an issue where these are funds in the receiver's possession. They passed all that. They went right to the defendant, and they said, defendant, forget about due process. Forget about justice. We're going to attach your assets, even though we do not have a judgment against you, and even though your constitutional rights have not been afforded. This is not a case where these are assets that are within the discretion of the receiver. I'm sorry. Why doesn't having a United States district judge rule on the preliminary injunction isn't why isn't that more due process than most people get? Well, with respect to this particular issue, Your Honor, it is within the discretion of the court. The receiver contends in the brief that this court has analyzed it and weighed the issue. Why isn't that the end of the case, as far as you're concerned? Because they didn't weigh it. The district court looks at the evidence, as Judge Wallace has pointed out, has to make a preliminary determination, has made a preliminary determination that's well within the bounds of the evidence presented to her, determines that the receiver is appropriate, and then comes the question that somebody has to pay for the receiver. And so some district court makes a preliminary determination, notices that your client was seen siphoning funds out of the company on the day the TRO goes into effect, gets a report from the receiver. The receiver essentially says the company's been looted. And so the judge makes a preliminary determination that says that what looks to me like the likely bad guy pays. If she's wrong about that event, if she changes her mind, fine, then get the money back. Two things, Your Honor. First of all, there was no argument before the court as to that issue. This was something that was inserted into the order. If the record's review, there is no motion for this. There is no reply to this. There is no oral argument to this. It just suddenly appears in the order, and that's very important. And it's most important for this reason, Your Honor. I respectfully stand. Did you get a chance to comment on the order? I'm sorry. Yes, Your Honor. It was submitted to you, and you objected to that aspect of the order? Counsel, there's a dispute as to that, Your Honor. The counsel at the time contends that that was not in the order that they reviewed. Certainly the SEC said, yes, it was. It was in there, and you didn't object. But, Your Honor, with respect to any kind of waiver issue, if it's not there to argue in the first place, then that's why you wouldn't see anything in the record to object to it. Was it ever brought to the attention of the court? Yes, ma'am, it was. In October 2004, it was. So the court had an opportunity to view the issue from both sides and left that provision in there? Yes, ma'am. Okay, so now why isn't that within her discretion? Because, Your Honor, there's no support whatsoever for the ability of the court in their discretion. Discretion is a word that can be a buzzword to allow any kind of conduct, but it still has to look to the issue of whether or not it's proper based upon prior case law. It has to look at whether or not the discretion was abused. Yes, ma'am. And with respect to holiness... That's a very different argument than you made just 60 seconds ago, which was that this was slipped by without anybody noticing. You know, it was slipped into order, nobody noticed. Now... No, sir, there are two different arguments here. The initial question is... I know, and they're contradictory. No, sir, I don't believe they are. You don't gain credibility here by arguing things that are... I don't believe they are. I suppose it would be an abuse of discretion for the district court to do something that it never considered. That's right, Your Honor. Okay. And with respect to the... But here the district court did consider it. Well, the district court considered it by referring back to the prior order. That's how the district court considered it. Of course, there are arguments saying, well, I have an order that allows this. I don't understand your argument. I thought you just said that it was brought to the attention of the district court that this paragraph was here, and the argument was made that this was put in without knowledge on our part. Was that argument made to the district court? No, ma'am. No, ma'am. I misspoke. I apologize. The argument that was made before the court is the first time that this is raised on the record is in October 2004. At that time, there was an issue that was raised with respect to the authority to sell or hold Mr. Vassallo's assets personally responsible. The issue of whether it was slipped into the record or not slipped into the record was not raised at that time, ma'am. I'm sorry. The question I thought was being asked of me is, has this issue ever been raised with respect to Mr. Vassallo's assets being subject to the receivership, responsibility for receivership? Has that ever been raised? And yes, ma'am, it was in October 2004. The important point here is if you start at the outset of the case to allow a defendant's assets to be held and to be subjected to receivership costs, there's no apportionment here. There's no consideration of the final outcome of the case. I believe it's a very dangerous precedent. It's a dangerous precedent because it would give a receivership who ordinarily and the case law is very clear on this, must ordinarily look to the assets and nothing else but the assets of the receivership to be paid. There are a couple of cases that have cited that, well, you can look to the assets of the person who has been subjected to it. Why is the short answer to this argument is this is why we have district judges. And district judges are there. Again, we've said they have very, very broad discretion as an administration of receiverships because it involves such complex matters. And a vigilant district judge can be trusted to keep an eye on these things and make sure there are no abuses. And I realize abuses are possible, but we have district judges. And, you know, they supervise these things. You may not like what the district judge here did, but it does not look to me like this was a district judge that didn't pay attention or wasn't involved in it or was rather stamping or anything like that. So it looks like an alert, active district judge who simply made decisions that your client doesn't like. It isn't that, Your Honor. It's the fact that you're determining the bypassing judicial process by allowing a And that's the difference. But that hasn't happened yet. Have any assets been attached? Well, yes. Yes, ma'am. All of Mr. Vassallo's assets have, in fact, been frozen. Yes. All of his assets have been frozen. And we have a situation where now those assets that are frozen purportedly for the benefit of the shareholders that he's found to have committed this fraud and has found to have resulted in damages, those very assets, if the SEC is right, we contend they're not. But if the SEC is right and Mr. Vassallo did do all the acts which he's accused of and it did cause all the damages that they're now claiming, the only asset, the only asset that's available for attachment by, for disgorgement by the shareholders, by the investors, of which, by the way, Mr. Vassallo is one of the largest investors, of these investors is his home. And before the investors can get to that asset, there's a situation by virtue of this order where, in fact, the receiver can go in for their own personal benefit, not for the benefit of the investors, but for his own personal benefit, and take those assets. And, Your Honor, I submit that that's not only a dangerous precedent, that's improper. And I believe that that would be, to me, abusive discretion, particularly when it's determined at the outset of the case before there's been any determination at all, final determination at all as to what, what the, what the claim was, as to what the findings are with respect to the claims and with respect to the damages. That is all done at the very outset of the case to say, okay, we're going to determine that all receiver costs are going to be apportioned to the defendant. And, Your Honor, with respect to attaching those, the assets of the defendant and then holding those assets responsible for payment of the receiver, that, I submit that that is an abusive discretion, particularly when those assets are not in the control of the receiver. This is not a situation where the receiver is in charge of a piece of property and must make a decision as to what to do with the property. This, these are solely the defense. Kennedy. Where is it written that the receiver's payment must come from the thing he's administering? Where, where, where is that written? Miller. Your Honor, several cases have been cited. I will cite two of the cases that the receiver has cited, too, in their brief. They have cited two, two cases that I would invite the Court's attention to. One case that they've cited, too, is, excuse me, Your Honor, Bowerstock, 101F2nd. That court, that case specifically provides that the general rule is that, that the receiver assets are, in fact, the assets, the assets in control of the receivership are the assets which the receiver must look to for payment. What circuit is that from? That is, I'm sorry, ma'am. I'm sorry, Judge. What circuit? Eight, I think, right? I believe that's right, Your Honor. I believe it is eight. And it talks about a general rule, right? Yes, ma'am, it does. There's nothing in the Ninth Circuit that supports your argument. Well, and, and Your Honor, I. What about American Principles Holding? I'm sorry, Your Honor. There is a Ninth Circuit case going the other way. Well, with, it went the other way. I apologize, Your Honor. I thought it went the other way. There's no. Is the Ninth Circuit law going the other way? There is no case that I'm aware of, Your Honor, that provides that the defendant alone and solely is going to be held responsible for the assets of a receivership at the start of the case. There's no case that provides for that at all. My question to you was, is there a Ninth Circuit case that supports your argument that the receiver must look primarily to the assets of the trust? There's a United States Supreme Court case that refers to that, Your Honor. I'm not aware of a Ninth Circuit case. What's the United States Supreme Court case? The United States Supreme Court case is Atlantic Trust v. Chapman. It is an old case, Your Honor, but it is a case that apparently is still good law. That's 208 U.S. 360. Okay. 1908. Now, what language are you relying upon? That's the case where the plaintiff was trying to get. That's right, Your Honor, but it still provides. That's correct, Your Honor. But in that case, it specifically provided that they are first to look to the assets of the receivership for payment. And there are several cases that hold that address the issue when the plaintiff is trying to look for payment, but not when the defendant is trying to look for payment. And that is the difference, Your Honor. Well, you didn't manage to save your 10 minutes. Okay. Thank you, Your Honor. Why don't we hear from the other side? Who's going to speak first? May it please the Court. My name is Christopher Pack, and I represent the United States Security and Exchange Commission in these two consolidated appeals. The Commission filed a brief in the first appeal. It did not file a brief in the second appeal, although it has along the way addressed some of the issues pertinent to the second appeal. I would be happy to answer any questions you may have with regard to either appeal. However, receivers counsel, Mr. Jeffrey Patterson, is present here today, and he perhaps might be the more appropriate person to ask, to answer questions pertaining to the receiver's compensation. Does SEC take a position on the sale of the house? In the district court, we joined. The order that provides for fees being the cost of the receiver being borne by Mr. Barsano? The answer is yes to both questions. In the district court, the SEC filed a notice of joinder with regard to the receiver's motion for authority to sell the house. And, of course, the SEC has supports every provision contained in the initial district court order. The SEC obtained that order. That's correct. And including the part of the order that says that the receiver's fee should be paid by the defendant. By the defendant. Yes. The receivership is over the assets of Presto, basically, of the company. That's correct. Then how do you get from that? I mean, I can understand if the receiver then has a claim that some particular asset, which appears to be held by somebody else, really belongs to the estate, that he can go after it and so on. And then there would be some sort of a process for dealing with that. How do you get a receivership of a company and then just order some other person to pay the cost? Well, a receivership, of course, is a creature of equity. And district court has a great deal of discretion in deciding not only when a receivership should be created, but how it should be managed. Usually you're managing the assets of an estate that the receiver is the receiver of, not somebody else's. That's correct. I think all of the cases cited by the defendant in this case involving receivership compensation, not a single one of those cases involves a case where a receivership the creation of a receivership was made necessary by the fraudulent activities of the defendant. And that's the key distinction here. You have receiverships appointed in innumerable circumstances. But here you have the very special circumstances where it's the fraudulent activities that make the appointment of a receivership necessary. Now, in the commission's brief in the first appeal. That's not the first time in U.S. history this has happened. No, no, no. In the commission's brief in the first appeal on page 42, note 19, we cited a treatise, Clark, on the law and practice of receivers. And that treatise states, and I quote, reading from footnote 19, it has been held that where the fraudulent conduct of the defendant makes it necessary for the court to take possession of the property by its receiver, the costs and expenses of the receivership may be taxed against the defendant. Is that your best case authority to support your argument that treatise? Yes, it is. And that case cites a number of State law. The treatise is from 1959, and the treaty cites several State court decisions. It doesn't cite any Federal court decisions. And in the course of our research, that was the authority that we were able to come up with. There is no authority on the other side, however, either. And we believe that in view of the fact that a receivership is a creature of equity, it makes eminent sense to have an exception to the general rule that the fees of the receiver should be paid out of the receivership state. It makes eminent sense to have an exception to that general rule when it's fraudulent activity by the defendant that has made the appointment of a receiver necessary. What's your response to opposing counsel's observation that it is an abuse of discretion to do that at the outset of the case before the facts have been fleshed out? Well, if I could answer that question in two ways. First, a procedural answer. Earlier, Judge Kuczynski indicated he wanted counsel to address the current jurisdiction aspects of the case. They are as follows. The district court has granted the commission partial summary judgment on its substantive claims. It says, i.e., that there is the commission gets summary judgment on the fact that there have been violations. The court still had some questions about the extent of disgorgement that should be ordered. There was a hearing held on July 25th before the district court, and we anticipate that the district court at some point in the near future will rule on the commission's motion for a final summary judgment, at which point the court will say, well, I'm going to enter a summary judgment not only on the commission's substantive claims, but also on the amount that the defendant should be required to disgorge. And at that point, this whole issue will become moot. As I said, we anticipate that it's not moot now, so that's the answer to my question. No, it's not moot at the present day. The answer is that where there is an abundant, abundant evidence of wrongdoing on the part of the defendant, and the defendant has had an opportunity to contest the commission's showing, and in the district court's view has failed to vet that showing, then it's an appropriate exercise of the district court's discretion to order that these fees should be paid. So is it your position that that showing was made prior to the district court's  Well, yes. The district court – the commission made a massive showing of securities law violations in this case in connection with its application for a TRO. And the district court entered that order in response to the commission's motion for a TRO. Now, if the defendant had an opportunity to come back, and before the TRO was converted to a preliminary injunction, had an opportunity to come back and say, well, this is where the commission is wrong, the defendant failed to do that. And – So was the TRO converted to a preliminary injunction after a hearing? I believe that that is the case. I'm not absolutely certain as to the extent of the proceedings, but I believe that that is the case. I think it's notable that in the course of these proceedings, depositions have been taken or attempted to be taken, both of Defendant Vassallo and his wife, and both of them have chosen to take the Fifth Amendment rather than testify on any matter of substance. And so you have here a case at this point where the commission has put forth a massive amount of evidence showing these representations and other securities law violations. Defendants have had a chance to put in their own contrary evidence and, indeed, have been requested to testify, and they've refused to do so. And I think in the face of such a massive showing of violations – Not really surprising that somebody would plead the Fifth Amendment when – No. – under, as you say, massive investigation by – But this is a civil law enforcement proceeding, and, of course, it's well established that an adverse inference can be drawn against a party in a civil proceeding. No, it can be, but I'm asking you whether we should, whether – I mean, we can draw that adverse inference, but we don't have to draw that adverse inference. We can just assume, infer that the guy's really scared because he's got all these government laws chasing him, and, you know, who knows what – You know, with vast resources behind them and – Well, of course – So there are lots of reasons why somebody might avoid stumbling over something and getting himself into criminal trouble and might take the Fifth. So I don't – won't you persuade me why we should draw a negative inference? Well, of course, the commission doesn't rely on this case solely on the fact that – But you want some help from it. It's one additional factor to consider. I think we have plenty of – even without it, I think we have plenty of evidence. And I believe, parenthetically, I believe the case law is – The more you think about it, the more it seems like it's not such a good factor, doesn't it? Well, no. I believe the case law is that the inference should be drawn in the light of other evidence in the case. It's – courts are reluctantly, understandably reluctant to draw the adverse inference when there's no other – if you had a situation where someone had refused – Why isn't this just a case of sort of a overly enthusiastic businessman who has a company, he's got this asset, this contract with Mexico, which, you know, sounds pretty valuable to me. And so he's making a lot of optimistic claims. And a lot of times these things don't come true, but sometimes they come true. Where's the fraud here? This is not somebody who was selling, you know, silver mines in Zanzibar or non-existent assets. I mean, it sounds like a venture that might have succeeded and that was being puffed a little hard. And I find it a little difficult to swallow the idea that you get the guy – you may put him in Zanzibar who then spends – how much has Zanzibar spent up to now? A lot of money. A lot of money. A lot of money to basically get him out of his home, take away everything he has and take away his house to boot. It seems a little heavy-handed. Well, when investors put their money into an investment, they have the right to the truth about that investment, at least to the extent that the truth is material. And I submit that what happened here went far beyond puffery. The district court found – What's the biggest whopper he's told? You know, just sort of pick from the record, you know, the kind of thing that if you said it out loud, we'd all be sort of – we'd have to sort of say, boy, is that bad. Boy, is that fraudulent. Give me the big picture. Well, I suppose that would have to do with the revocation proceedings against the Mexican – which threatened the Mexican license. Like every regulatory authority that deals with telecommunications matters, the Mexican regulatory authorities require that if you get a license that you perform to a certain level, otherwise they're going to pull your license. And what happened here is that the Mexican authorities apparently determined that there was some question as to whether this venture was living up to the terms of his license or was going to live up to the terms of his license. They were busy fighting off the SEC, right? No, no. This was previous. This was previous. This was in November 2001. In November 2001, the Mexican authorities began a revocation proceeding against PRESTO's license, long before the SEC got involved in this. They had – the Mexican authorities apparently had some doubts about whether PRESTO was going to be able to do what it said it was going to do. So they began this proceeding and – to revoke the license. Now, the SEC doesn't claim that the license was actually revoked, but there was a serious cloud, and that would matter to an investor, whether – because if the license was going to be pulled, then the whole venture would be worthless. So that was a very important fact for investors. In December 2002, more than a year later, after the revocation proceedings began, there was a shareholder meeting. And at that shareholder meeting, there was videotape taken, and the Commission has the videotape, and the transcript was made of the videotape. And there is a page from that transcript at 257 of the Commission's supplemental excerpt of records. And at that transcript reads, at the meeting, unidentified speaker, male, what's the status of the concession? Is it bound by any encumbrances or issues? Mind you, this is a year after the revocation proceedings had begun. Mr. Basal, no, not at all. Interesting you should ask that, though. I've been getting a few phone calls lately on that subject, so that word must be going around. Mr. Basal is confronted with the question, are there any issues with the Mexican license, the concession? And he says, no, not at all. That's a flat-out lie. There was an issue. Was the revocation proceedings still pending at the time? Yes, it absolutely was. It's not anymore. Well, I'm not certain what the current status of the revocation proceeding is. But regardless, at that point in time, the fact that there was a revocation proceeding going on, even if Mr. Basal had been entirely confident that it was going to be resolved favorably to him, the very fact that the proceeding existed was material, I think would have been material. And the fact that the proceeding was not material would have been material to any reasonable investor. And the investor would have had a right to that information. Now, Mr. Basal could have said, well, there's this revocation proceeding, but we think we're going to beat it because, you know, we're going to show them we can do what we promise we can do, et cetera, et cetera. I mean, he could have explained it. He could have spun it. But the point was he had an obligation to tell the truth at that meeting, and he didn't. And the fact that he committed this one lie is all the more damning in light of all the other misrepresentations that have been shown by the record, misrepresenting relationships with various companies, misrepresenting support he has from the Commerce Department, misrepresenting the use that's going to be made of the assets. This is not a case involving mere puffery. Do you want to save some time for the test receiver? Yes. I'd like to reserve the remainder of my time for the receiver's counsel. Okay. Good morning, Your Honors. May it please the Court, Jeffrey Patterson for the receiver, Thomas Lennon. I will try not to replow too much of the same ground that was addressed by Mr. Pack. First, with respect to the more recent appeal in which the receiver is named appellee, there is no jurisdiction for review of that interlocutory order at this point in time. 28 U.S.C. Section 1292A2 does not provide an exception. As appellant argues, the SEC versus American Principals Holdings case, as well as the FTC Overseas Unlimited Agency case, both Ninth Circuit cases have clearly interpreted that last clause of 1292A2 to refer to orders refusing to take steps in furtherance of a receivership, not orders taking steps in furtherance of a receivership. Therefore, that order is simply not appealable at this point. So, counsel, at what point would the owner of the house be able to get review of any order to sell the house? At what point would review be available? Are you saying that the house would have to be sold before that would be reviewable? Yes. Unless a stay were obtained pending a further appeal. But in this case, as Judge Kaczynski pointed out earlier, there has simply been an order approving a procedure for the marketing of the property. What if there were an order approving the sale of the house? Would that be appealable? Not as, not under section 1292A2. If it was a part of a final judgment in the case, it would be appealable, but not standing by itself in the context of the receivership case. That's reading that language very, very narrowly. And that's how American Principals and Overseas Unlimited reads it. Those cases address that issue dead on and say that if we were to interpret it the other way, that would mean that every order entered in a receivership case essentially would be appealable. They say that's only matters that deny? Yes. They take the word refusing in that last clause of the section to apply to the entire clause, refusing to take steps in furtherance of the receivership goals. In terms of the court's order that the individual defendant be responsible for the cost of the receivership, which is pretty unusual. It's actually not unusual. Perhaps it's unusual that the defendant challenges it. But I can speak from personal experience, at least in three other SEC cases I've been in, it's been part of the order. And in this case, as in the other orders, the order reads the company and the individual would be responsible for the cost. It gives the court the discretion as the case unfolds as to how the court will order the receivership costs to be paid. If the company turns out to be solvent and there are plenty of estate assets to pay the cost of the receivership, it may be appropriate for those costs to be paid out of the receivership assets. If the company turns out to be insolvent and there are insufficient funds to pay the cost of the receivership, and it is determined that the defendant was responsible for having the receivership being necessary, then it's entirely within the court's broad discretion to order that the defendant be charged with the cost of the receivership. Kennedy. What sort of process does a defendant get to contest? I mean, the practical matter is when you have a receivership like this one, if you can go after the personal assets of a defendant, that's outside of the company's estate, that money is going to be gone. It's not going to be able to be refunded. There isn't going to be any left. If it's distributed to some creditors and stuff like that, it will be impossible to unscramble the egg if it turns out in the end that there was some defense to this. Well, in this case, Your Honor, where we're talking about the costs and expenses of the receivership, when the court makes these interim awards of fees and costs, they're generally subject to disgorgement. So if it ultimately turns out that the court has made an interim award of fees to the receiver and the defendant is then able to persuade the court that the defendant is completely innocent of any wrongdoing, should not be held responsible for the cost of the receivership, then the receiver will be liable for the return of those fees to the defendant. The receiver will have to look elsewhere, possibly to the SEC, as some cases have held, where the procurement over the receiver turns out to have been inequitable or inappropriate, then the receiver can look to the SEC or the party at whose insistence the receiver was appointed. But in this case, it isn't an abuse of discretion. The cases say, yes, the general rule is you get it from the receivership assets, but that's the general rule. There are circumstances in which the court has a discretion to tax the moving party for the cost or the other party. And in this case, the circumstances definitely warrant the charging of the costs to the individual defendant. Not only did the judge find at the preliminary injunction stage that there was a likelihood of success and that the evidence showed the violations and the — I can't think of the word — the siphoning of the money from the company, but then the conduct of the defendant through the case. The defendant who was found to be in contempt of the court's order for interfering with the receiver's duties, for not cooperating with the receiver, thereby increasing the costs of the receivership. All the more reason why the defendant should be liable for the costs. And then finally, the Court has granted, in part, the SEC's motion for summary judgment. The Court has found liability on the securities violations, on the misrepresentations to investors, and has said in that order that a permanent injunction will issue at the time of the final judgment, but it's simply being held in abeyance until the disgorgement and civil penalties are resolved. So the Court has now confirmed its initial findings of likelihood of success, has said expressly in its order partially granting the motion for summary judgment that a permanent injunction will issue, further confirming that in this case the circumstances dictate that the Court is well within its broad discretion to order that the individual defendant be responsible. We don't know when this will happen. We don't. The motion's been argued and submitted. The Court has it under submission at this point in time. We expect an order from the Court any day. Okay. Thank you.  You have a very brief... Yeah, you can have a minute. Very, very brief, Your Honors. My response to the arguments I've just heard is, why have a trial? Why have a trial? If you're going to allow a situation where there's an appointment of a receivership, you decide what assets, as the Court has discretion to do, you decide what assets they're going to be in charge of and to have a fiduciary duty, a duty of loyalty, and to exercise the best job they can over those assets. In this case, they decide to close down the company within days. You do that job, and any fees that you've incurred from the very outset you've determined without determination of any trial, that the defendant's going to pay for it. What's left? Well, but as counsel for the receiver points out, is if it turns out you do have a trial, and it turns out the client is innocent, the trustee will be required to discourage their fees. So I don't know how this is any different from any other situation where you have to have some It'll either be the SEC, it'll either be the company, it'll be a trustee, or it'll be a client. These things don't come out of thin air, and so on a preliminary basis, somebody has to pay the bill, even if it's the trustee himself who pays the bill by not getting paid. So I don't see why your client is in a better position to complain about it than anybody else. Because here's what's missing, Your Honor. There's no case, not one case, not one, not a treatise that allows for the receiver to do that. The receiver's argument is, well, if I was wrong, I'd have to pay the money back. I'm not answering my question. Yes, sir. If you want a case, you may have a case. This may be the case. So the question is, if you heard it, somebody has to pay this money. Somebody that this record has determined that they'll be a receiver. And receivers, just like everything else in life, don't come free. Somebody has to pay for that. It's either the company, it's the SEC, the receiver himself, because he does the work and incurs expenses and not get paid. So in a sense, he's paying it. Or your client. So those are the four possibilities. And given that you've had a preliminary determination by the district court that your client looks like the bad guy in the picture, why is he in any better position to complain than anybody else about paying the fees? Because the determination of the appointment of the receiver and the receiver's obligation is not, Your Honor, punitive in nature. It is not a disgorgement. It is not a damage issue. Somebody has to pay the bill. Somebody has to pay the bill. It doesn't come from thin air. Somebody has to cover these expenses. Why, after the district court has determined on a preliminary basis your client is the most likely one to wind up having to pay the bill in the end, and if wrong, you know, the receiver will pay the money back, you know, I don't see the problem with having one of the disciplines made a preliminary determination also make the preliminary determination that he will pay the bill. Because a determination like that, Your Honor, can wreak all kinds of havoc, including the fact that if this order falls, it's natural progression as the receiver says it can, the house is gone. According to the receiver, we have no right for appeal. So his house is gone. What are you going to do? Give him his house back? We're going to be able to obtain this property, and real property is unique, Your Honor. We're going to be able to right this defendant's wrong by buying his house back. I don't know if the house is available, Your Honor. Put the house aside because we don't yet have a sale of the house. But the house is exactly what they're after, and the house is exactly what the receiver said we are allowed to get based upon the order. So in the case where there is no house at stake, where the individual defendant has plenty of money so they don't have to sell his house, comes out differently from this case because the house is involved? I think that that is exactly why the courts have held that the money is supposed to come from the receivership fund, and in the rare case, they can go after the person at the end of the day who appointed the receiver. And those cases are there. There is no case that allows for you to do it from the beginning, Your Honor. I submit this is why. It would be a violation of due process to take his property, to be a taking, and especially when there are other parties who are entitled to the property, including Mrs. Vassell. It's a taking of property, Your Honor, with no determination at all. You take property all the time. All you're entitled to is due process. I understand. This is, in fact, what courts are mostly here for. I understand, Your Honor. It's to take from one and give to somebody else. That's mostly what we do. But in these facts, Your Honor, in these circumstances, of course, I cannot speak to all the other cases in front of this Court. In this case, it would be highly improper, Your Honor. Thank you. Thank you. The case is argued. We'll stand for a minute. I believe, Your Honor, this is the last case of the court. We are adjourned.
judges: Canby, Kozinski, Rawlinson